## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### 9:17-CV-81237-ROSENBERG/HOPKINS

### 9:15-CV-80073-ROSENBERG/HOPKINS

ADT, LLC,

    Plaintiff,

v.

ALDER HOLDINGS, LLC, et al.,

    Defendants.

_____/

## ORDER STAYING CASE 17-CV-81237, ORDER DISMISSING CASE 15-CV-80073, AND ORDER ON INJUNCTION

This matter is before the Court on Defendants' Motion to Dismiss at docket entry 18 in case 17-CV-81237 ("ADT III") and Plaintiff's Motion to Dismiss at docket entry 432 in case 15-CV-80073 ("ADT II"). Upon review of the Motions and Plaintiff's Complaint, the Court concludes that the central issue in contention between the parties is whether Plaintiff's Complaint in ADT III falls within the scope of a prior settlement agreement between the parties in ADT II. In the Complaint in ADT III, Plaintiff alleges that although the parties entered into a settlement agreement on May 24, 2017 in ADT II, Defendants damaged Plaintiff between May 24, 2017 and the date the Court entered an injunction (in connection with the settlement agreement) on October 20, 2017, also in ADT II. The Court previously has addressed the settlement agreement, and any disagreements arising under the agreement, in ADT II: "If the parties disagree over which Defendants are obligated to pay Plaintiffs pursuant to the settlement agreement, the parties may file a separate motion in connection therewith which the undersigned shall refer to Magistrate Judge Hopkins." DE 430 at 3, 15-CV-80073.

## The Settlement Agreement between the Parties

The settlement agreement in ADT II was read into the record at a settlement conference before Judge Hopkins on May 24, 2017. The germane portion of the transcript reads as follows:

> Defendants: All right. Essentially, the first term is that the parties agree to the entry of an injunction that would preclude Alder and its affiliates, subsidiaries, agents, et cetera, from a list of conduct.
>
> . . .
>
> So, number one, the enjoined parties shall not make any false statement and shall not train any other agents to make any false statements regarding the function, performance, capabilities, specifications, features, requirements, reliability, availability, or design of any ADT customers' equipment, security systems, or services, or to falsely represent to any ADT customer any characteristics about such customers' ADT system.
>
> . . .
>
> And, then, the second part of the agreement the next essential term, is if ADT believes there has been a violation of the injunction, the parties have agreed to a dispute resolution process that has to be followed prior to filing a motion for contempt with the Court, which includes just generally speaking, written notice and production of the recordings and other facts relating to the alleged violation And a timeframe of 14 days to resolve the dispute. If it is not done it will go to mediation within 45 days and if it is not resolved in mediation, then, ADT may seek appropriate relief with the Court.

DE 414 at 4-6. The parties, thus, agreed at the settlement conference to the entry of an injunction prohibiting certain behavior and agreed on the precise behavior that was to be enjoined; the parties also agreed that if either party believed that the injunction had been violated, they would resolve that disagreement through mediation before filing a motion to compel. The undersigned was not made aware of the parties' need for an entry of an injunction until a review of a Report and Recommendation that was filed in connection with a Motion to Enforce Settlement as no motion for entry of an injunction was ever filed until after the parties began to litigate their post-settlement conduct. That Motion to Enforce Settlement was filed on July 29, 2017, and, in a

confusing manner, sought for the Court to declare the effective date of the parties' settlement agreement. The Court ruled that a settlement agreement did exist and was effective as of May 24, 2017. The Motion also requested that the Court enter the injunction agreed-to at the settlement conference and, after a Report and Recommendation and objections were filed, the Court entered the parties' agreed-upon injunction on October 20, 2017.

Plaintiff argues that because Defendants caused damages to the Plaintiff during the period of time prior to the entry of the injunction, the injunction cannot strictly be used as a basis for Plaintiff to seek relief. The Court is unaware of any authority for the proposition that the injunction entered on October 20, 2017, could have or can now be backdated to an earlier date. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651 (1974). Nonetheless, this does not necessarily mean that the Court is without the power to apply the terms contained in the injunction to the parties' behavior during the period running from May 24, 2017, to October 20, 2017. The Court has the power to judicially estop each party from arguing that the injunction cannot be applied to their conduct during this period of time. The Court may invoke this power because: the parties expressly agreed that the activities that are the subject of the injunction are the same activities that the parties agreed would be enjoined beginning on May 24, 2017; the injunction could have been entered as soon as May 24, 2017; and a review of the settlement agreement and settlement conference shows that the parties intended for their conduct to prospectively be governed by the agreed-upon injunction. The parties agreed on May 24, 2017, that the Defendants would be enjoined from the very behavior that ultimately was encompassed within the agreed-upon injunction entered on October 20, 2017.

## The Doctrine of Judicial Estoppel

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000); *see* 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

Courts have uniformly recognized that the purpose of judicial estoppel is "to protect the integrity of the judicial process," *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," *States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993). *See In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982) (judicial estoppel "protect[s] the essential integrity of the judicial process"); *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953) (judicial estoppel prevents parties from "playing 'fast and loose with the courts'" (quoting *Stretch v. Watson*, 69 A.2d 596, 603 (N.J. Super. 1949))). Because the

rule is intended to prevent "improper use of judicial machinery," *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotation marks and citation omitted).

Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *Allen*, 667 F.2d, at 1166. Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. *E.g., United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards*, 690 F.2d at 599. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *See Davis*, 156 U.S. at 689.

The Application of Judicial Estoppel to the Parties in ADT II

Here, all of the elements for judicial estoppel are met. The parties agreed to the entry of the injunction in ADT II. The parties did not agree to a *delayed* entry of an injunction. The parties similarly agreed to the specific terms of the injunction entered by the Court. The parties were on actual notice, through their own agreement, of the conditions that would apply to their conduct, prospectively. The parties expressed a desire to have an injunction entered to apply to their conduct, prospectively, on May 24, 2017. The parties represented the same to the Court, on

the record at the settlement conference. The Court therefore first considers whether any party's "later position [is] 'clearly inconsistent' with its earlier position." If either Plaintiff or Defendants takes the position that they should not be bound by the *terms* contained in the injunction for the period between May 24, 2017 and October 20, 2017—which they fully agreed to—the Court concludes that such a position would be inconsistent. The parties agreed to undertake certain actions and they agreed to the Court's entry of an injunction in connection therewith. By way of example, Defendants agreed on the record that they would "not make any false statement and shall not train any other agents to make any false statements regarding the function, performance, capabilities, specifications, features, requirements, reliability, availability, or design of any ADT customers' equipment, security systems, or services, or to falsely represent to any ADT customer any characteristics about such customers' ADT system." Defendants agreed to ensure their compliance with those conditions through the entry of an injunction. If Defendants were to take the position that they were permitted to undertake the foregoing actions (or any other prohibited action) solely because of a delay in the entry of the injunction, the Court concludes that that position, viewed in the totality of the settlement agreement, is inconsistent with its position set forth in the record at the settlement conference. This same reasoning applies to Plaintiff, the party who sought the injunction in the first place.

Furthermore, the Court relied upon the parties' settlement agreement in at least two respects. First, the Court removed this case from its trial calendar after great expenditure of judicial labor in preparing this case for trial. Second, the Court relied upon the parties' settlement agreement in entering the agreed-upon injunction—an act which employed the power of this Court. *See Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133-1134 (9th Cir. 2012)

(holding that a party's use of the coercive power of a court subsequent to settlement may be grounds for judicial estoppel). Settlement agreements, even settlement agreements not adopted by this Court, may serve as a basis for the invocation of judicial estoppel. *Id.; Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 887-88 (7th Cir. 2005). Similarly, requests to enforce a settlement agreement may serve as a basis for judicial estoppel to be invoked[1] and requests for the Court to enter an injunction may serve as grounds for judicial estoppel as well. *See Murray v. Silberstein*, 882 F.2d 61, 66-67 (3rd Cir. 1989).

The Court next considers "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" The Court concludes that this element is met here. Based upon the terms of the settlement agreement as a whole, if the Court were to accept the position that any party was permitted to circumvent or act against the terms of the injunction (while awaiting entry of that injunction), the Court would certainly conclude that it was misled.[2]

The Court finally considers whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Here, if one party complied with the terms read into record at the settlement conference while the other party did not (while awaiting entry of the injunction), the Court concludes that the breaching party would certainly impose an unfair detriment on the opposing party.

---

1 *See Comm'cn Workers of Am. v. N.J. Dep't of Personnel*, 282 F.3d 213, 219 (3d Cir. 2002).
2 For authority for this proposition, the Court cites the cases, *supra*, on page 6 and page 7 of this Order: *Walt Disney World*, *Commonwealth Insurance*, *Communication Workers of America*, and *Silberstein*..

The policy underscoring the doctrine of judicial estoppel is met here. If any party before the Court were to act against the terms they agreed to be bound to at the settlement conference, such an action would result in unfair prejudice against the opposing party, would harm the integrity of the judicial process, and would equate to the improper use of judicial machinery. After the expenditure of great judicial labor in preparing ADT II for trial, this Court removed the case from its trial calendar based upon its reliance on the parties' settlement agreement. *Edwards*, 690 F.2d at 595 ("Judicial estoppel 'is intended to preserve the integrity of the judicial process.'"). In summary, while the Court will not modify or backdate the injunction entered on October 20, 2017,[3] all parties are estopped from raising the argument that they cannot be found to be in violation of the terms of the injunction between the dates of May 24, 2017 and October 20, 2017, based solely upon the date the Court entered the injunction.[4] Furthermore, it would appear to the Court that the parties may well be estopped from arguing that they cannot be estopped. The parties have expressly represented to this Court that they *want* the injunction to apply to conduct arising after May 24, 2017. For example, Plaintiff takes the position: "ADT agrees with Alder's reading of the law—Alder should have been bound by the injunction's terms on May 24." *ADT III*, DE 24 at 3. Defendants' position is similar: "Defendants have consistently treated the Injunction as applying to all customer complaints from May 24, 2017 forward and have

---

[3] Plaintiff references the fact that it obliquely requested this Court to enter the agreed-upon injunction *nunc pro tunc* as of May 24, 2017. That was a request contrary to law. "The failure of a court to act, or its incorrect action, can never authorize a *nunc pro tunc* entry. If a court does not render judgment or renders one which is imperfect or improper, it has no power to remedy any of these errors or omissions by treating them as clerical misprisions." *Cypress Barn v. Western Elec. Co., Inc.*, 812 F.2d 1363, 1364 (11th Cir. 1987) (quoting *Recile v. Ward*, 496 F.2d 675, 680 (5th Cir. 1974)). However, nothing in this Order shall preclude the parties from stipulating that the effective date of the injunction should be backdated to May 24, 2017.

[4] The Court's ruling on this issue does not conflict with the Court's earlier refusal to grant Plaintiff attorney's fees for Defendants' alleged violation of the injunction because such attorney's fees require Plaintiff to comply with the dispute resolution procedures in the injunction—procedures that Plaintiff did not comply with. *See* DE 430 at 2.

8

attempted to comply with the alternative dispute resolution requirements of the Injunction for complaints that were previously forwarded from AFT to Defendants." *Id.* at DE 18 at 2.

### Plaintiff's Arguments against Dismissal in ADT III

Turning to ADT III, Plaintiff takes the position that it has the unilateral right to completely ignore the terms of the injunction and the terms of the parties' settlement agreement. Plaintiff's position is as follows:

> Defendants' motion fails because it misconstrues the Permanent Injunction's dispute resolution procedures. Those procedures by their terms apply only to claims for contempt of the injunction, or for enforcement of the injunction. The Permanent Injunction states: "in the event ADT believes that the Enjoined Parties have violated the injunction, the parties will engage in the following dispute resolution process *before ADT files any motion for contempt or any motion to enforce the injunction.*" [APT II DE 431 at 3 (emphasis added).]
>
> ADT has not filed a motion for contempt of the Permanent Injunction. Nor has ADT filed a motion to enforce the injunction. Instead, ADT has served a summons and complaint. The complaint does not allege a violation of the Permanent Injunction. Rather, it alleges that defendants' deceptive sales practices occurring after May 24, 2017, violate Section 43(a) of the Lanham Act [DE 1 at 16-19] as well as the common law of unfair competition. [DE 1 at 19-22.] Nor does ADT's third claim, for breach of the settlement agreement, [DE 1 at 22-23] implicate the Permanent Injunction's provisions.

DE 24 at 1-2. Plaintiff's position is therefore that it gets to choose. If Defendants violate the Court's injunction, Plaintiff contends that it could elect to enforce the injunction or it could elect to file a new case alleging the same claims that it brought in ADT II. The Court unequivocally rejects Plaintiff's position as directly contravening the terms of the parties' settlement agreement and the terms of the injunction.[5] The settlement agreement and the injunction clearly **require**

---

5 Plaintiff's position is also grounds for the Court's invocation of the judicial estoppel doctrine—the doctrine is intended to prevent litigants from "play[ing] fast and loose with the courts." *U.S. Philips Corp. v. Sears Roebuck Co.*, 55 F.3d 592, 559 (Fed. Cir. 1995).

Plaintiff to follow a dispute resolution procedure **if Plaintiff believes that the Court's injunction has been violated**:

> The second part of the agreement, the next essential term, is **if ADT believes there has been a violation of the injunction**, **the parties have agreed to a dispute resolution process that has to be followed** prior to filing a motion for contempt with the Court, which includes just generally speaking, written notice and production of the recordings and other facts relating to the alleged violation.

DE 414 at 6 (emphasis added); DE 431 at 3. Based upon the Court's rulings herein, it would be impossible for Plaintiff to believe that the facts alleged in its Complaint in ADT III do not reference conduct that simultaneously violates the conditions of the injunction. Indeed, the allegations in Plaintiff's ADT III complaint essentially mirror the allegations in Plaintiff's ADT II complaint, with the dates of the conduct-at-issue being the only principle difference between the two complaints. The injunction clearly and unambiguously requires Plaintiff to pursue its remedies for a violation of the injunction through certain defined procedures—any other interpretation of the injunction renders Plaintiffs' agreement to this provision meaningless and illusory. *See, e.g.*, DE 414 at 6 ("[There is a] timeframe of 14 days to resolve the dispute. If it is not done it will not go to mediation within 45 days and if it is not resolved through mediation, then, ADT may seek appropriate relief with the Court.").

To be clear, the Court makes no finding that Plaintiff's assent to the settlement agreement means that Plaintiff has agreed to forego future claims or parallel claims in lieu of the dispute resolution procedures in the Court's injunction, nor does the Court make the finding that Plaintiff's assent to the dispute resolution process in the injunction is its *exclusive* remedy. The Court merely concludes that, at a minimum, Plaintiff has agreed that it *will* follow the dispute resolution procedures for any conduct it believes violates the ADT II injunction, and there is no

basis for Plaintiff to believe that its allegations in ADT III (at least in part) do not include allegations that Defendants violated the ADT II injunction. As a result, the Court exercises its discretion to stay ADT III pending completion of the dispute resolution process that the parties agreed to in ADT II. All parties are judicially estopped from arguing the injunction does not apply to their conduct between May 24, 2017 and October 20, 2017 for the reasons set forth above. The Court recognizes that the Court's stay may mean that Plaintiff's parallel remedies (its remedies at law separate and apart from its remedies under the injunction) are delayed, to an extent. Nonetheless, this delay is a direct result of (i) Plaintiff complying with the terms of the bargain that Plaintiff struck and (ii) the Court's duty to "secure the just, speedy, and inexpensive determination of every action and proceeding" pursuant to Rule 1 of the Federal Rules of Civil Procedure, together with the Court's duty to conserve judicial resources in the context of parallel litigation pending in this Court.

The Court addresses one final point. Plaintiff's ADT III claims encompass two different sets of factual allegations. The first is that Defendants have essentially violated the ADT II injunction—the Court has already addressed that issue at length in this Order. The second is that Defendants have breached the settlement agreement in ADT II. This latter issue, a breach of contract claim (Count III), litigates the scope of the terms in the parties' settlement agreement and also requests that the settlement agreement be reformed. Thus, Plaintiff's breach of contract claim focuses on a distinct set of facts separate and apart from its unfair competition claims (which focus on Defendants' sales practices) in Count I and Count II of its Complaint. Pursuant to Rule 21 of the Federal Rules of Civil Procedure, this Court may exercise its discretion to sever any claim when the claim is discrete and separate from other claims. *See, e.g., Nelson v. Blue*

11

*Eyed Holdings, Inc.*, No. 13-60569, 2013 WL 6238056 (S.D. Fla. Dec. 3, 2013). The Court exercises that discretion to sever Plaintiff's Count III in ADT III so that Plaintiff is not unfairly prejudiced in pursuing this claim while the case is stayed due to Count I and Count II. Plaintiff's Count III is therefore dismissed without prejudice for Plaintiff to refile that count in a separate case.

<u>Final Ruling in Case 17-CV-81237, ADT III</u>

Accordingly, it is hereby **ORDERED AND ADJUDGED THAT CASE 17-CV-81237 is STAYED**. The Clerk of the Court shall **CLOSE CASE 17-CV-81237 FOR ADMINISTRATIVE PURPOSES ONLY**. All pending motions in case 17-CV-81237 are **DENIED AS MOOT**. After the parties' dispute resolution process in ADT II has been completed, any party may move for the Court to lift the stay in case 17-CV-81237.[6] Count III is **SEVERED** and **DISMISSED WITHOUT PREJUDICE** for Plaintiff to refile that claim in a separate case. The Clerk of the Court **IS DIRECTED** to assign any newly-filed case with the severed claim in Count III to the undersigned.

<u>Final Ruling in Case 15-CV-80073, ADT II</u>

With respect to Plaintiff's motion to dismiss in case 15-CV-80073 at docket entry 432, the parties agreed to dismiss that case in the settlement agreement. DE 414 at 7. Defendants have responded to that motion by stating that they agree to dismissal. Defendants also request in the motion that the Court reserve jurisdiction to enforce its injunction and reserve jurisdiction to enforce the settlement agreement. The Court's reservation of jurisdiction was not a contingency in the parties' settlement agreement, nor is there any discussion of such in the transcript

---

6 At such time as the stay is lifted, the Court will permit Plaintiff to amend its complaint and Defendants to answer or file a responsive motion, consistent with the disposition and resolution of proceedings in *ADT II*, if necessary.

containing the terms of the settlement agreement. In light of the fact that Defendants agree to dismiss this case and that the dismissal of the case was a term of the settlement agreement, Plaintiff's motion to dismiss [DE 432] is **GRANTED**. The Court need not reserve jurisdiction to enforce its own injunction. *See, e.g.*, *Game Craft, LLC v. Vector Putting, LLC*, No. 6:14-CV-243, 2014 WL 3747341 (M.D. Fla. July 29, 2014); *c.f. Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 385-86 (E.D. Va. 2009) (discussing cases in which judges did not reserve jurisdiction to enforce an injunction). The Court declines to reserve any jurisdiction to enforce the terms of the settlement agreement.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 10th day of January, 2018.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE