UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:17-CV-81237-ROSENBERG/REINHART

ADT LLC, *et al.*,

    Plaintiffs,

v.

ALDER HOLDINGS, LLC, *et al.*,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' AMENDED COUNTERCLAIM

This matter comes before the Court upon Plaintiffs' Motion for Summary Judgment on Defendants' Amended Counterclaim. DE 173. The Court has carefully considered the Motion, Defendants' Response [DE 189], Plaintiffs' Reply [DE 205], and the record, and is otherwise fully advised in the premises. Plaintiffs' Motion for Summary Judgment on the Amended Counterclaim is **GRANTED IN PART AND DENIED IN PART** for the reasons set forth below.

### I.    BACKGROUND

The parties are competitors that sell residential alarm systems. DE 85 at 2; DE 91 at 1. In October 2017, this Court entered a permanent injunction to settle a lawsuit between the parties for unfair competition in violation of the Lanham Act and Florida law. DE 188-2; *see ADT LLC v. Alarm Prot. LLC*, No. 9:15-cv-80073 (S.D. Fla.). The permanent injunction prohibited Defendants from making false statements concerning Plaintiffs on a variety of topics. *See* DE 188-2 at 2-3. The permanent injunction included a dispute resolution process that the parties

were required to follow before Plaintiffs filed any motion for contempt of the injunction or any motion to enforce the injunction. *Id.* at 3.

Plaintiffs thereafter commenced the instant action, alleging contempt of the permanent injunction and ongoing unfair competition in violation of the Lanham Act and Florida law. DE 85. Defendants filed an Amended Counterclaim with three counts. DE 91. In Count I, Defendants allege that Plaintiffs are in contempt of the permanent injunction for failing to provide required information, for marking certain disclosures "attorney's eyes only," and for contacting and deposing customers before following the dispute resolution process. *Id.* at 36-38. Defendants allege tortious interference with their contracts with their customers and unfair competition in Counts II and III, respectively. *Id.* at 38-44. Plaintiffs now move for summary judgment on the Amended Counterclaim. DE 173.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets this burden, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). Conclusory allegations without specific supporting facts have no probative value for the non-moving party. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).

"A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). When deciding a summary judgment motion, a court views the evidence in the

light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). The court may not weigh conflicting evidence or make credibility determinations. *Id.*

### III.   ANALYSIS

#### A.   Count I: contempt of the permanent injunction

Defendants allege in Count I of the Amended Counterclaim that Plaintiffs are in contempt of the permanent injunction for failing to provide required information, for marking disclosures "attorney's eyes only," and for contacting and deposing customers before following the dispute resolution process. DE 91 at 36-38. Plaintiffs maintain that Defendants have now withdrawn their claim that Plaintiffs have failed to provide required information. DE 173 at 4, 8. Plaintiffs contend that they are entitled to summary judgment on Count I because the terms of the permanent injunction do not expressly prohibit either marking disclosures "attorney's eyes only" or contacting and deposing customers before following the dispute resolution process. *Id.* at 4. Plaintiffs argue that, if they did not produce customer call recordings on an attorneys-eyes-only basis, they would violate the parties' past litigation practices, needlessly expose customer information, and subject themselves to breach-of-privacy lawsuits by customers. *Id.* at 5-6. Plaintiffs also assert that, if they did not investigate customer complaints before pursuing claims through alternative dispute resolution, they would violate Rule 11 of the Federal Rules of Civil Procedure, which requires factual contentions to have evidentiary support. *Id.* at 7; *see* Fed. R. Civ. P. 11(b)(3).

A party may be held in contempt of a court order if clear and convincing evidence establishes that (1) the allegedly violated order was valid and lawful, (2) the order was clear and unambiguous, and (3) the alleged violator had the ability to comply with the order. *Ga. Power*

*Co. v. Nat'l Labor Relations Bd.*, 484 F.3d 1288, 1291 (11th Cir. 2007). Any ambiguities or uncertainties in the order are construed in a light most favorable to the party charged with contempt. *Id.* The "focus in a civil contempt proceeding is not on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue." *Id.* (quotation marks omitted).

The permanent injunction requires Plaintiffs to provide Defendants written notice "of the alleged violation and the facts and all recordings in their entirety supporting such violation" before Plaintiffs file a motion for contempt or a motion to enforce the injunction. DE 188-2 at 3. As an initial matter, Defendants concede that they are no longer pursuing their claim that Plaintiffs failed to provide information required under the permanent injunction. DE 173-1 at 5; DE 173-3; DE 188 at 6; DE 189 at 2-3, 12. Defendants maintain, however, that Plaintiffs are not entitled to summary judgment on that claim because Plaintiffs originally violated the permanent injunction by making incomplete disclosures, but later supplemented their disclosures. DE 188 at 10; 189 at 11-12.

Plaintiffs have produced evidence that, on August 28, 2017, they served on Defendants written notice of numerous alleged violations, together with a spreadsheet containing all of the facts then known to Plaintiffs and all of the recordings that they could identify. *See* DE 173-1 at 2-3 (citing the Exhibit located at DE 188-12 at 4). Plaintiffs have also produced evidence that they supplemented these disclosures numerous times as more violations became known and as

4

more information became available. *See* DE 173-1 at 3; DE 188-12 at 5-6.[1] Defendants cite to emails between the parties' attorneys to support their claim that Plaintiffs made incomplete disclosures. DE 188 at 10; DE 188-12 at 10-27. These emails do not support Defendants' claim, but rather demonstrate only that the parties' attorneys frequently disputed whether Plaintiffs' disclosures were complete. *See* DE 188-12 at 10-11, 15, 19, 21, 25-27. Defendants have not properly disputed Plaintiffs' factual assertions that they produced all of the information known to them, nor have Defendants presented specific facts showing that Plaintiffs' productions of information were incomplete. *See Shaw*, 884 F.3d at 1098 (stating that a party opposing summary judgment must come forward with specific facts showing that there is a genuine issue for trial). The undisputed facts in the record establish that Plaintiffs provided information as the permanent injunction requires. Defendants have not shown that there is a genuine issue for trial on this portion of their contempt claim.

As to Defendants' remaining allegations of contempt, the permanent injunction does not explicitly preclude Plaintiffs from marking disclosures "attorney's eyes only." In fact, the permanent injunction provides for the disclosures to be made through Defendants' legal department. DE 188-2 at 3. The permanent injunction similarly does not explicitly preclude Plaintiffs from contacting and deposing customers before engaging in the dispute resolution process. Defendants' failure to identify a violation of a clear and unambiguous provision of the permanent injunction is fatal to their contempt claim. *See Ga. Power Co.*, 484 F.3d at 1291 (listing the elements of a contempt claim).

---

[1] Defendants purport to dispute paragraphs 11 through 13 of Plaintiffs' Statement of Material Facts Not in Genuine Dispute. DE 188 at 3-5; *see also* DE 173-1 at 2-3. Defendants' objections to paragraphs 11 through 13, however, are unresponsive to Plaintiffs' factual assertions about what Plaintiffs produced. Defendants' objections instead add additional factual assertions and make legal arguments about the ramifications of what Plaintiffs produced. *See* DE 188 at 3-5. Paragraphs 11 through 13 of Plaintiffs' Statement of Material Facts Not in Genuine Dispute are deemed undisputed because Defendants do not cite evidence to refute Plaintiffs' factual assertions. *See* Fed. R. Civ. P. 56(e)(2) (permitting a Court to deem a fact undisputed when a party fails to properly address another party's assertion of fact).

The Court therefore concludes that there are no genuine issues of material fact for trial as to any of Defendants' allegations of contempt. Plaintiffs are entitled to summary judgment on Count I of the Amended Counterclaim.

### B. Count II: tortious interference with contracts

Defendants allege in Count II of the Amended Counterclaim that Plaintiffs have interfered with Defendants' contracts with their customers by making misrepresentations about Defendants and by convincing customers to cancel their contracts. DE 91 at 30-34, 38-41. The elements of a Florida claim of tortious interference with a contract are (1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the contract's breach, (4) absence of a justification or privilege, and (5) damages resulting from the breach. *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998).

Plaintiffs contend that they are entitled to summary judgment because Defendants lack evidence on the first, third, and fourth elements of a tortious-interference claim. As to the first element, however, Plaintiffs acknowledge that Defendants have identified at least a "handful" of customer contracts with which Plaintiffs allegedly interfered. DE 173 at 8; *see also* DE 91 at 30-34; DE 188 at 9-10; DE 203-1. Even if other contracts have not been identified, the existence of this "handful" of contracts satisfies the first element.

As to the third element of a tortious-interference claim, Plaintiffs argue that Defendants lack evidence demonstrating that Plaintiffs intentionally caused customers to cancel their contracts. DE 173 at 9-11. Defendants have produced evidence indicating that Plaintiffs' representatives are trained to—and do—tell Defendants' customers to cancel their contracts, make statements to customers designed to convince them to cancel their contracts, and instruct

customers to report Defendants to the Better Business Bureau, law enforcement, state consumer protection agencies, and state attorneys' general.  *See* DE 188 at 9.  Defendants also have produced evidence indicating that some of their customers have canceled their contracts with Defendants and have instead signed contracts with Plaintiffs.  *See id.* at 10; DE 203-1.  Plaintiffs suggest that customers may have canceled their contracts for other reasons and contend that there is no direct evidence that a representative's statements about Defendants caused a customer to cancel a contract.  DE 173 at 9-10; DE 205 at 8-10.

"The requisite showing of causation cannot be supported by mere supposition that defendant's interference caused the cessation of the business relationship."  *Realauction.com, LLC v. Grant St. Grp., Inc.*, 82 So. 3d 1056, 1059 (Fla. 4th Dist. Ct. App. 2011).  Nevertheless, at this stage in the proceeding, the Court must view the evidence, and draw all reasonable inferences, in Defendants' favor.  *See Furcron*, 843 F.3d at 1304; *see also Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) ("If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment.").  The Court concludes that the evidence of Plaintiffs' representatives' statements to customers, coupled with customers' subsequent cancellations, permits a reasonable inference that Plaintiffs intentionally caused contract cancellations.

Plaintiffs also maintain that their representatives only spoke to customers about cancellation during the three-day period in which the customers could rescind their contracts with Defendants and that, under Florida law, an at-will contract cannot be the subject of a tortious-interference claim.  DE 173 at 10-11.  First, Florida's law on this point is unclear.  *Compare Perez v. Rivero*, 534 So. 2d 914, 916 (Fla. 3d Dist. Ct. App. 1988) (stating that "the

7

general rule is that an action *will lie* where a party tortiously interferes with a contract terminable at will" (emphasis added)), *with Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So. 2d 252, 255 (Fla. 3d Dist. Ct. App. 1994) (citing *Perez* for the proposition that "[t]he general rule is that an action for tortious interference *will not lie* where a party tortiously interferes with a contract terminable at will" (emphasis added)). *See Debose v. Univ. of S. Fla.*, 178 F. Supp. 3d 1258, 1270 (M.D. Fla. 2016) ("As evidenced by a comparison of *Greenberg* and *Perez*, it is unclear whether an at will employment contract can form the basis for a claim of tortious interference."). Regardless, Defendants have produced evidence indicating that, on at least one occasion, a representative of Plaintiffs spoke to a customer about a contract with Defendants outside of the three-day rescission period. *See* DE 188 at 7; DE 203-13; DE 203-14. Plaintiffs' contention that they cannot be held liable because they only interfered with at-will contracts is unavailing.

As to the fourth element of a tortious-interference claim, Plaintiffs argue that their conduct was justified because they were attempting to "win back" customers that they had lost due to Defendants' misconduct. DE 173 at 11-12. Whether a defendant's actions were unjustified "depends upon a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances among which the methods and means used and the relation of the parties are important." *Ins. Field Servs., Inc. v. White & White Inspection & Audit Serv., Inc.*, 384 So. 2d 303, 306-07 (Fla. 5th Dist. Ct. App. 1980) (stating that "the ultimate inquiry is whether the interference by the defendant is sanctioned by the rules of the game" (quotation marks omitted)). The issue of justification is a factual question that is best left to a jury. *See Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1280 (11th Cir. 2015) (stating that whether a defendant

acted without justification is "a fact-intensive inquiry that requires an examination of the defendant's conduct, its motive, and the interests it sought to advance" (quotation marks omitted)); *Mfg. Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982) (stating that, "when there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury" (quotation marks omitted)); *Monco Enters., Inc. v. Ziebart Corp.*, 673 So. 2d 491, 492 (Fla. 1st Dist. Ct. App. 1996) ("The question of whether an action is privileged is a jury question."). Thus, the Court must leave to a jury the question of whether Plaintiffs' actions were justified.

Accordingly, the Court concludes that there are genuine issues of material fact related to Defendants' tortious-interference claim to be resolved by a jury. Summary judgment on Count II of the Amended Counterclaim is inappropriate.

### C. Count III: unfair competition

The parties agree that this Court's analysis of the tortious-interference claim in Count II applies to the unfair-competition claim in Count III. DE 173 at 12-13; DE 189 at 17-18; *see also Mfg. Research Corp.*, 693 F.2d at 1040 (indicating that the elements of tortious interference and unfair competition are the same); *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1353 (S.D. Fla. 2006) ("The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." (quotation marks omitted)). As discussed above, there are genuine issues of material fact for trial related to Defendants' tortious-interference claim. For those same reasons, summary judgment on Count III of the Amended Counterclaim is inappropriate.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment on Defendants' Amended Counterclaim [DE 173] is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs are granted summary judgment on Count I of the Amended Counterclaim. Plaintiffs' motion for summary judgment on Counts II and III of the Amended Counterclaim is denied.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 7th day of February, 2019.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record